IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HABIB ULLAH, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1008 (JDB) |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF DAVID N. COOPER

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate General's Corps, United States Air Force Reserve , hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.      I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Habib Ullah that are suitable for public release.  The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member.  This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _10 August 2006_

David N. Cooper
Lt Col, JAG Corps, USAFR



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 1 0 3 8

1 5 MAR 2005

FOR OFFICIAL USE ONLY

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #907**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #907 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John B. Wiegmann)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

14 Feb 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor   *SEC*

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN #907

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #7 of 13 September 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I find that:

   a.  The detainee was properly notified of the Tribunal process and elected to participate. *See* exhibit D-a of Record of Tribunal Proceedings   The detainee also provided the Tribunal with a sworn oral statement in question and answer format. *See* enclosure (3) of Record of Tribunal Proceedings   The Tribunal considered the detainee's sworn statement in its deliberations.

   b.  The Tribunal was properly convened and constituted by enclosure (1).

   c.  The Tribunal substantially complied with all provisions of references (a) and (b). Note that some information in exhibit R-4 was redacted.  The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

   d.  The detainee did not request that any witnesses or evidence be produced.

   e.  The Tribunal's decision that detainee #907 is properly classified as an enemy combatant was unanimous.

   f.  The detainee's Personal Representative was given the opportunity to review the record of proceedings and declined to submit post-tribunal comments to the Tribunal. *See* enclosure (5) of Record of Tribunal Proceedings

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

UNCLASSIFIED

UNCLASSIFIED

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN #907

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

PETER C. BRADFORD
LT, JAGC, USNR

UNCLASSIFIED



# Department of Defense
## Director, Combatant Status Review Tribunals

13 Sep 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #7

Ref:   (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal
established by "Implementation of Combatant Status Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004
is hereby convened.  It shall hear such cases as shall be brought before it without further
action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS:**

███████████████, Colonel, U.S. Army; President

███████████████ Commander, JAGC, U.S. Navy; Member (JAG)

███████████████, Lieutenant Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Naval Reserve



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

22 November 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 907

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ▓▓▓▓▓▓

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

### (U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#7___

(U) ISN#: ___907___

Ref:    (a) (U) Convening Order for Tribunal #7 of 13 September 2004 (U)
        (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
        (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
        (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
        (3) (U) Summary of Detainee Testimony (U/FOUO)
        (4) (U) Copies of Documentary Evidence Presented (S/NF)
        (5) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 5 November 2004, the Tribunal determined by a preponderance of the evidence that Detainee #907 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, Taliban forces, or associated forces that are engaged in hostilities against the United States or its coalition partners, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#7____

ISN #: _____907_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was part of or supporting Taliban forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The Tribunal held this hearing on 5 November 2004. The Recorder presented Exhibits R-1 and R-2 during the unclassified portion of the Tribunal. The primary exhibit, the Unclassified Summary of Evidence (Exhibit R-1), indicates, among other things, that: the detainee worked for Samoud Khan as a bodyguard and cook in his Mousauwal compound in Zormat, Afghanistan, in December 2001; a senior Taliban commander, and Al Qaida supporter, in Gardez frequently visited Samoud at the Mousauwal compound; Samoud Khan has claimed to be on a jihad against the United States and instructed his men they must do the same; the detainee admitted to being on a jihad; Samoud Khan, with the assistance of others, was responsible for rocket attacks against United States forces from firing positions on Laywan Mountain; the detainee was instructed to fight to the death when American forces raided the Mousauwal compound on 11 December 2002, but surrendered instead; and, just prior to the U.S. forces raid on the Mousauwal compound, the detainee instructed his compatriots to all provide the same false story if captured. The Recorder called no witnesses.

The detainee participated actively in the Tribunal proceedings and responded under oath to each of the allegations on the Unclassified Summary of Evidence. In sum, the detainee admitted that he worked for Samoud Khan and carried an AK-47 with him at all times, but denied being a member of the Taliban or Al Qaida or fighting U.S. or coalition forces. The detainee's sworn testimony and the answers to the questions posed to him are summarized in Enclosure (3) to the CSRT Decision Report. The detainee presented no other evidence.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

During the classified session of the Tribunal, the Recorder presented Exhibits R-4 through R-17 (Exhibit R-3 was not offered into evidence) without comment. The Personal Representative neither presented classified exhibits nor made any comments on the classified evidence. After considering all of the classified and unclassified evidence, the Tribunal determined that the detainee is properly classified as an enemy combatant.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: R-1, R-2, R-4 through R-15, and D-a. The Recorder did not offer Exhibit R-3 into evidence.

    b. Testimony of the following persons: None.

    c. Sworn statement of the detainee:

        See Enclosure (3) to the CSRT Decision Report.

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The detainee requested no witnesses.

The detainee requested no additional evidence be produced.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The Recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2, the FBI redaction certification, provided no usable evidence. Accordingly, the Tribunal had to look to other evidence to support the assertions on the Unclassified Summary of Evidence and the Tribunal's conclusions.

    b. As noted in paragraph 2, above, the detainee made a sworn statement responding to each of the allegations on the Unclassified Summary of Evidence. Afterwards, he answered questions posed by the Tribunal members. In sum, the detainee denied being a member of the Taliban or Al Qaida; admitted he worked for Samoud Khan as a cook and carried an AK-47; denied any knowledge of a senior Taliban commander/Al Qaida supporter visiting Samoud at the Mousauwal compound; denied

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

being on a Jihad or fighting against the United States, claiming he only worked as a cook; admitted he previously said Samoud Khan was responsible for rocket attacks against U.S. positions in Afghanistan, but clarified he does not know for sure if they were against U.S. positions or personal enemies of Samoud; admits he told U.S. interrogators in Afghanistan that he was ordered to fight to the death when U.S. forces came to capture him, but says he made the admission under fear of death; and denied ever telling his compatriots to lie. The Tribunal found the detainee's testimony unpersuasive when considered in conjunction with the classified evidence. A summarized transcript of the detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3).

## 6. Consultations with the CSRT Legal Advisor

The Tribunal notified the CSRT Assistant Legal Advisor regarding the detainee's allegations that U.S. personnel in Afghanistan forced him to admit things that weren't true by stripping him of all of his clothes, beating him, and threatening to turn dogs loose on him (see Enclosure (3) to the CSRT Decision Report). As per instructions, the OARDEC Forward Chief of Staff and the OARDEC Liaison to the Criminal Investigation Task Force and JTF-GTMO were notified of the matters on 5 November 2004.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The detainee understood the Tribunal proceedings and actively participated throughout the hearing.

    c. The detainee is properly classified as an enemy combatant because he was part of or supporting Taliban forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### Summarized Sworn Detainee Statement

*The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibits R-1 and R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The Recorder administered the Muslim oath to the detainee.*

*The Personal Representative read the accusations to the detainee so that he could respond to the allegations. The allegations appear in italics, below.*

*a. The detainee is associated with Al Qaida and the Taliban.*

Detainee: I heard of Al Qaida when I came to this camp. I was never with the Taliban.

*a.1. The detainee worked for Samoud Khan as a bodyguard and cook in his Mousauwal Compound in Zormat, Afghanistan in December 2001.*

Detainee: Yes, I was very poor and I worked as a cook to support my family. I was paid three to four thousand per month.

*a.2. A senior Taliban commander, and Al Qaida supporter, in Gardez frequently visited Samoud at the Mousauwal Compound.*

Detainee: I have no such information because I have not worked with him very long. Ask Samoud. He's in Bagram.

*a.3. Samoud Khan has claimed to be on a jihad against the United States and instructed his men they must do the same.*

Detainee: No. It's impossible to fight the Americans with just Kalashnikovs. Samoud had lots of personal enemies and was fighting against them.

*b. The detainee engaged in hostilities against the United States or its coalition partners.*

Detainee: I never fought against the Americans. I was a poor person working as a cook and I don't know anything.

Personal Representative: In addition to that, the detainee made statements to me earlier. Can I remind him of those?

ISN# 907
Enclosure (3)
Page 1 of 6

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

Tribunal President: Yes

*Personal Representative: the detainee also said people worked for Americans, in fact the detainee worked for a general his name it's just in the detainee's files. The detainee worked for the general but does not know how long.*

Detainee: There was an American there. The head of the campaign, I was working for him.

Tribunal President: Let me just clarify, those are statements Habib made to you during an interview.

Personal Representative: Correct

Detainee: Yes

*b.1. The detainee admitted to being on a jihad.*

Detainee: No, I didn't do it.

*b.2. Samoud Khan, with the assistance of others, was responsible for rocket attacks against United States forces from firing positions on Laywan Mountain.*

Detainee: Yes, I made the statement, but I am not sure if those people were Samoud's enemies or if they were Americans.

*b.3. The detainee was instructed to fight to the death when American forces raided the Mousauwal Compound on 11 December 2002, but surrendered instead.*

Detainee: No, I didn't want to fight with Americans. Totally I surrendered I never fought.

*b.4. Just prior to the U.S. forces raid on the Mousauwal compound, the detainee instructed his compatriots to all provide the same false story if captured.*

Detainee: I have never lied. If I have lied, what kind of proof do you have? Show me proof that I have lied.

Tribunal President: Habib would you like to add anything else to the allegations or your responses to the allegations?

Detainee: I don't have anything else to say. My commander is detained. You should refer any questions to him.

UNCLASSIFIED//~~FOUO~~

Tribunal President: Habib, this is your opportunity to speak. We don't have the commander here in front of us now. We may not have the opportunity to talk to the commander. This is your opportunity to tell your story.

Detainee: I told you I was a poor person, and that I was working over there to support my mom and my dad to support them financially. I was just working for money. I never worked for Al Qaida or the Taliban.

*The Personal Representative and the Recorder had no questions.*

<u>Tribunal Members' questions</u>

Q. When you worked for the American General, what did you do?
A. One of our village's representatives, named Abdul, was working for Americans and I was working for him.

Q. Doing what?
A. I was a guarding and also cooking.

Q. What village was that?
A. Zormat

Q. I understand you said you are not Taliban or Al Qaida, but is Samoud Khan associated?
A. Samoud – I don't know about him being with Al Qaida, but he was against the Taliban. He had killed a Taliban and ran to Pakistan to hide.

Q. Why do you think the U.S. attacked the compound at Mousauwal?
A. I don't know; maybe someone spied on us.

Q. When the rocket attacks took place, where were you? What were you doing? Cooking?
A. I wasn't with him at that time. I hadn't been with him for a long time, like 2 months or so.

Q. So you stopped working for him before the attacks?
A. No, I wasn't with him.

Q. So you joined him after the rocket attacks?
A. After the fight, I started working with him.

Q. How did you learn about the attacks?
A. He himself had told me, and also people from the village.

Q. So did he tell you they were attacks on U.S. forces?
A. Who?

ISN# 907
Enclosure (3)
Page 3 of 6

UNCLASSIFIED//~~FOUO~~

Q. Samoud Khan?
A. Samoud Khan had told me so, and also the people of the village. They said it was on Gardez people.

Q. Initially you were told it was on U.S. forces?
A. Yes.

Q. How long did you work for Samoud Khan?
A. Two months, or so maybe a little less.

Q. Were you given instructions to fight to the death?
A. By whom?

Q. The allegation reads that you were instructed to fight to the death when American forces raided the Mousauwal compound on 11 December.
A. No. Why would I fight because Americans came in to search, so there was no reason to fight.

Q. Were you given instructions to fight to the death?
A. If I wanted to fight, no, the Americans were standing in front of us, we would have fought. But we didn't fight.

Q. I am not asking if you fought or surrendered. I am asking you if you were given instructions to fight to the death?
A. By who?

Q. Samoud Khan.
A. He had told me to tell the Americans we are people of Hafiz Zula (phonetic). I work for him. First, when we were in Gardez, they had taken all our clothes off. I was naked with 8 other people with us when I made that statement at that time. Americans were beating us really hard, and they had dogs behind us and they said if we didn't say this, they would release the dogs. After that, an American grabbed me by the throat and said, "Has this happened to you?" and then I said "yes," and that is why I made the statement "Samoud told me to fight."

Tribunal President's questions.

Q. Where were you born?
A. What do you mean?

Q. Where were you born? Where were you raised?
A. I was raised in Pakistan.

Q. Why did you go to Afghanistan?

UNCLASSIFIED//FOUO

A. That is my place. That is my homeland. My mom and dad are there. My house is there.

Q. Were you born in Afghanistan or Pakistan?
A. I am not sure. Maybe Pakistan.

Q. Then your family moved back to Afghanistan?
A. Yes.

Q. Where was your family living?
A. Zormat.

Q. Where was the compound located?
A. Zormat.

Q. What type of compound was Mousauwal?
A. It was a region with a lot of houses over there.

Q. Help me to understand. Is Samoud Khan the ruler or the governor of this compound?
A. He was the commander.

Q. So there were military troops at this compound?
A. Yes. They were our friends.

Q. It was a training camp?
A. What do you mean?

Q. Military training?
A. There were just some Kalashnikovs there.

Q. So was it a supply compound?
A. It was a house.

Q. Did they store weapons in the house?
A. Rockets.

Q. Did you also work as a bodyguard?
A. I was a cook.

Q. Did you also have to carry a weapon as a cook?
A. Yes, totally. I had a Kalashnikov.

Q. You were protecting yourself and the compound from who?
A. I am telling you, Samoud had personal enemies in Zormat. That caused us to fear for our own lives, so we carried the Kalashnikovs.

UNCLASSIFIED//~~FOUO~~

Q. Did you have to receive any training to use the AK-47?
A. I don't even know how to use the Kalashnikov properly. I used it at weddings and during the Eid festival. I just shot the Kalashnikov up in the air.

Q. My question is, did you have to receive any training? Is that yes or no?
A. No, I don't know how to use the Kalashnikov properly. If I have a target right there, and this point, I don't know how to fire at that target properly.

Q. Have you ever worked with any Al Qaida or Taliban soldiers or fighters?
A. No.

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, U.S. Army
Tribunal President

ISN# 907
Enclosure (3)
Page 6 of 6

UNCLASSIFIED//FOUO

# DETAINEE ELECTION FORM

**Date:** 2 Nov 04

**Start Time:** 13:50

**End Time:** 14:30

ISN#: 907

Personal Representative: ████████████, Major, USAF
(Name/Rank)

Translator Required? YES          Language? PASHTU

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? YES
----------------------------------------------------------------

**Detainee Election:**

[X]    **Wants to Participate in Tribunal**

[ ]    **Affirmatively Declines to Participate in Tribunal**

[ ]    **Uncooperative or Unresponsive**

**Personal Representative Comments:**

Plans to attend no witness at this time. Calm and cooperative

Personal Representative: ██████████████████████

UNCLASSIFIED//FOUO

Exhibit D-a

UNCLASSIFIED

### Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (14 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – RAHMAN, Habib

1.  Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States indicating that the detainee engaged in hostilities against the United States or its coalition partners.

   a.  The detainee is associated with al Qaida and the Taliban:

      1.  The detainee worked for Samoud Khan as a bodyguard and cook in his Mousauwal Compound in Zormat, Afghanistan in December 2001.

      2.  A senior Taliban commander, and al Qaida supporter, in Gardez frequently visited Samoud at the Mousauwal Compound.

      3.  Samoud Khan has claimed to be on a jihad against the United States and instructed his men they must do the same.

   b.  The detainee engaged in hostilities against the United States or its coalition partners:

      1.  Detainee admitted to being on a jihad.

      2.  Samoud Khan, with the assistance of others, was responsible for rocket attacks against United States forces from firing positions on Laywan Mountain.

      3.  The detainee was instructed to fight to the death when American forces raided the Mousauwal Compound on 11 December 2002, but surrendered instead.

      4.  Just prior to the US forces raid on the Mousauwal compound, the detainee instructed his compatriots to all provide the same false story if captured.

4.  The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

Exhibit R-1

**Memorandum**



To    :    Department of Defense          Date 10/12/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Col. David Taylor, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division ██████████
           Asst. Gen. Counsel ██████████████

Subject    REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ███████████

       Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

   CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

       The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

       The following documents relative to ISN 907 have been redacted by the FBI and provided to the OARDEC:

FD-302 dated 02/14/2003

---

   [1]Redactions are blackened out on the OARDEC provided FBI document.

   [2]See Executive Order 12958

Exhibit R-2

Memorandum from ██████████ to Col. David Taylor
Re:  REQUEST FOR REDACTION, 10/12/2004


        If you need additional assistance, please contact
Asst. Gen. Counsel ████████████████████████,
██████████████████████ or Intelligence Analyst
████. Intelligence Analyst ████████████████████,

There is no Exhibit R-3.

Exhibit R-3

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on 8 November 2004, I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #907.

√ I have no comments.

____ My comments are attached.



Name

Signature

$8\ Nov\ 04$
Date

ISN #907
Enclosure (5)

UNCLASSIFIED//~~FOUO~~