IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

| | | |
|---|---|---|
| Hicks (Rasul) v. Bush | ) | Case No.  02-CV-0299 (CKK) |
| Al Odah v. United States | ) | Case No.  02-CV-0828 (CKK) |
| Habib v. Bush | ) | Case No.  02-CV-1130 (CKK) |
| Kurnaz v. Bush | ) | Case No.  04-CV-1135 (ESH) |
| Khadr v. Bush | ) | Case No.  04-CV-1136 (JDB) |
| Begg v. Bush | ) | Case No.  04-CV-1137 (RMC) |
| Khalid (Benchellali) v. Bush | ) | Case No. 04-CV-1142 (RJL) |
| El Banna v. Bush | ) | Case No.  04-CV-1144 (RWR) |
| Gherebi v. Bush | ) | Case No.  04-CV-1164 (RBW) |
| Boumediene v. Bush | ) | Case No.  04-CV-1166 (RJL) |
| Anam v. Bush | ) | Case No.  04-CV-1194 (HHK) |
| Almurbati v. Bush | ) | Case No.  04-CV-1227 (RBW) |
| Abdah v. Bush | ) | Case No.  04-CV-1254 (HHK) |
| Al Qosi v. Bush | ) | Case No.  04-CV-1937 (PLF) |
| Paracha v. Bush | ) | Case No.  04-CV-2022 (PLF) |
| Al Marri v. Bush | ) | Case No.  04-CV-2035 (GK) |
| Zemiri v. Bush | ) | Case No.  04-CV-2046 (CKK) |
| Deghayes v. Bush | ) | Case No.  04-CV-2215 (RMC) |
| Abdullah v. Bush | ) | Case No.  05-CV-0023 (RWR) |
| Al Mohammed v. Bush | ) | Case No.  05-CV-0247 (HHK) |
| Al Adahi v. Bush | ) | Case No.  05-CV-0280 (GK) |

| | | |
|---|---|---|
| Al Joudi v. Bush | ) | Case No. 05-CV-0301 (GK) |
| Al Wazan v. Bush | ) | Case No. 05-CV-0329 (PLF) |
| Al Anazi v. Bush | ) | Case No. 05-CV-0345 (JDB) |
| Alhami v. Bush | ) | Case No. 05-CV-0359 (GK) |
| Ameziane v. Bush | ) | Case No. 05-CV-0392 (ESH) |
| Batarfi v. Bush | ) | Case No. 05-CV-0409 (EGS) |
| Sliti v. Bush | ) | Case No. 05-CV-0429 (RJL) |
| Kabir v. Bush | ) | Case No. 05-CV-0431 (RJL) |
| Qayed v. Bush | ) | Case No. 05-CV-0454 (RMU) |
| Al Shihry v. Bush | ) | Case No. 05-CV-0490 (PLF) |
| Al Oshan v. Bush | ) | Case No. 05-CV-0520 (RMU) |
| Tumani v. Bush | ) | Case No. 05-CV-0526 (RMU) |
| Al Oshan v. Bush | ) | Case No. 05-CV-0533 (RJL) |
| Mammar v. Bush | ) | Case No. 05-CV-0573 (RJL) |
| Al Sharekh v. Bush | ) | Case No. 05-CV-0583 (RJL) |
| Magram v. Bush | ) | Case No. 05-CV-0584 (CKK) |
| Al Rashaidan v. Bush | ) | Case No. 05-CV-0586 (RWR) |
| Mokit v. Bush | ) | Case No. 05-CV-0621 (PLF) |
| Al Daini v. Bush | ) | Case No. 05-CV-0634 (RWR) |
| Errachidi v. Bush | ) | Case No. 05-CV-0640 (EGS) |
| Ahmed v. Bush | ) | Case No. 05-CV-0665 (RWR) |
| Battayav v. Bush | ) | Case No. 05-CV-0714 (RBW) |
| Adem v. Bush | ) | Case No. 05-CV-0723 (RWR) |

| | | |
|---|---|---|
| Aboassy v. Bush | ) | Case No.  05-CV-0748 (RMC) |
| Hamlily v. Bush | ) | Case No.  05-CV-0763 (JDB) |
| Imran v. Bush | ) | Case No.  05-CV-0764 (CKK) |
| Al Habashi v. Bush | ) | Case No.  05-CV-0765 (EGS) |
| Al Hamamy v. Bush | ) | Case No.  05-CV-0766 (RJL) |
| Hamoodah v. Bush | ) | Case No.  05-CV-0795 (RJL) |
| Rahmattullah v. Bush | ) | Case No.  05-CV-0878 (CKK) |
| Rahman v. Bush | ) | Case No.  05-CV-0882 (GK) |
| Bostan v. Bush | ) | Case No.  05-CV-0883 (RBW) |
| Muhibullah v. Bush | ) | Case No.  05-CV-0884 (RMC) |
| Mohammad v. Bush | ) | Case No.  05-CV-0885 (GK) |
| Wahab v. Bush | ) | Case No.  05-CV-0886 (EGS) |
| Chaman v. Bush | ) | Case No.  05-CV-0887 (RWR) |
| Basardh v. Bush | ) | Case No.  05-CV-0889 (ESH) |
| Nasrullah v. Bush | ) | Case No.  05-CV-0891 (RBW) |
| Shaaban v. Bush | ) | Case No.  05-CV-0892 (CKK) |
| Sohail v. Bush | ) | Case No.  05-CV-0993 (RMU) |
| Tohirjanovich v. Bush | ) | Case No.  05-CV-0994 (JDB) |
| Al Karim v. Bush | ) | Case No.  05-CV-0998 (RMU) |
| Al Khalaqi v. Bush | ) | Case No.  05-CV-0999 (RBW) |
| Kahn v. Bush | ) | Case No.  05-CV-1001 (ESH) |
| Mohammed v. Bush | ) | Case No.  05-CV-1002 (EGS) |
| Mangut v. Bush | ) | Case No.  05-CV-1008 (JDB) |

| | | |
|---|---|---|
| Hamad v. Bush | ) | Case No. 05-CV-1009 (JDB) |
| Khan v. Bush | ) | Case No. 05-CV-1010 (RJL) |
| Al Hela v. Bush | ) | Case No. 05-CV-1048 (RMU) |
| Mousovi v. Bush | ) | Case No. 05-CV-1124 (RMC) |
| Zalita v. Bush | ) | Case No. 05-CV-1220 (RMU) |
| Ahmed v. Bush | ) | Case No. 05-CV-1234 (EGS) |
| Aminullah v. Bush | ) | Case No. 05-CV-1237 (ESH) |
| Al Khaiy v. Bush | ) | Case No. 05-CV-1239 (RJL) |
| Bukhari v. Bush | ) | Case No. 05-CV-1241 (RMC) |
| Pirzai v. Bush | ) | Case No. 05-CV-1242 (RCL) |
| Peerzai v. Bush | ) | Case No. 05-CV-1243 (RCL) |
| Alsawam v. Bush | ) | Case No. 05-CV-1244 (CKK) |
| Mohammadi v. Bush | ) | Case No. 05-CV-1246 (RWR) |
| Al Ginco v. Bush | ) | Case No. 05-CV-1310 (RJL) |
| Ullah v. Bush | ) | Case No. 05-CV-1311 (RCL) |
| Al Bihani v. Bush | ) | Case No. 05-CV-1312 (RJL) |
| Mohammed v. Bush | ) | Case No. 05-CV-1347 (GK) |
| Saib v. Bush | ) | Case No. 05-CV-1353 (RMC) |
| Hatim v. Bush | ) | Case No. 05-CV-1429 (RMU) |
| Al Subaiy v. Bush | ) | Case No. 05-CV-1453 (RMU) |
| Dhiab v. Bush | ) | Case No. 05-CV-1457 (GK) |
| Ahmed Doe v. Bush | ) | Case No. 05-CV-1458 (ESH) |
| Sadkhan v. Bush | ) | Case No. 05-CV-1487 (RMC) |

| | | |
|---|---|---|
| Faizullah v. Bush | ) | Case No.  05-CV-1489 (RMU) |
| Faraj v. Bush | ) | Case No.  05-CV-1490 (PLF) |
| Ahmad v. Bush | ) | Case No.  05-CV-1492 (RCL) |
| Amon v. Bush | ) | Case No.  05-CV-1493 (RBW) |
| Al Wirghi v. Bush | ) | Case No.  05-CV-1497 (RCL) |
| Nabil v. Bush | ) | Case No.  05-CV-1504 (RMC) |
| Al Hawary v. Bush | ) | Case No.  05-CV-1505 (RMC) |
| Shafiiq v. Bush | ) | Case No.  05-CV-1506 (RMC) |
| Kiyemba v. Bush | ) | Case No.  05-CV-1509 (RMU) |
| Attash v. Bush | ) | Case No.  05-CV-1592 (RCL) |
| Al Razak v. Bush | ) | Case No.  05-CV-1601 (GK) |
| Mamet v. Bush | ) | Case No.  05-CV-1602 (ESH) |
| Rabbani v. Bush | ) | Case No.  05-CV-1607 (RMU) |
| Zahir v. Bush | ) | Case No.  05-CV-1623 (RWR) |
| Ghanem v. Bush | ) | Case No.  05-CV-1638 (CKK) |
| Albkri v. Bush | ) | Case No.  05-CV-1639 (RBW) |
| Almerfedi v. Bush | ) | Case No.  05-CV-1645 (PLF) |
| Zaid v. Bush | ) | Case No.  05-CV-1646 (JDB) |
| Al Bahooth v. Bush | ) | Case No.  05-CV-1666 (ESH) |
| Al Siba'i v. Bush | ) | Case No.  05-CV-1667 (RBW) |
| Al Uwaidah v. Bush | ) | Case No.  05-CV-1668 (GK) |
| Al Jutaili v. Bush | ) | Case No.  05-CV-1669 (TFH) |
| Ali Ahmed v. Bush | ) | Case No.  05-CV-1678 (GK) |

Khandan v. Bush                    )          Case No.  05-CV-1697 (RBW)

Al Rubaish v. Bush                 )          Case No.  05-CV-1714 (RWR)

Qasim v. Bush                      )          Case No.  05-CV-1779 (JDB)

Sameur v. Bush                     )          Case No.  05-CV-1806 (CKK)

Al Harbi v. Bush                   )          Case No.  05-CV-1857 (CKK)

Aziz v. Bush                       )          Case No.  05-CV-1864 (HHK)

Hamoud v. Bush                     )          Case No.  05-CV-1894 (RWR)

Al Qahtani v. Bush                 )          Case No.  05-CV-1971 (RMC)

Alkhemisi v. Bush                  )          Case No.  05-CV-1983 (RMU)

Al Shabany v. Bush                 )          Case No.  05-CV-2029 (JDB)

Muhammed v. Bush                   )          Case No. 05-CV-2087 (RMC)

Othman v. Bush                     )          Case No.  05-CV-2088 (RWR)

Ali Al Jayfi v. Bush               )          Case No.  05-CV-2104 (RBW)

Jamolivich v. Bush                 )          Case No.  05-CV-2112 (RBW)

Al Mithali v. Bush                 )          Case No.  05-CV-2186 (ESH)

Al Asadi v. Bush                   )          Case No.  05-CV-2197 (HHK)

Alhag v. Bush                      )          Case No.  05-CV-2199 (HHK)

Nakheelan v. Bush                  )          Case No.  05-CV-2201 (ESH)

Al Subaie v. Bush                  )          Case No.  05-CV-2216 (RCL)

Ghazy v. Bush                      )          Case No.  05-CV-2223 (RJL)

Al Shimrani v. Bush                )          Case No.  05-CV-2249 (RMC)

Amin v. Bush                       )          Case No.  05-CV-2336 (PLF)

Al Sharbi v. Bush                  )          Case No.  05-CV-2348 (EGS)

| | | |
|---|---|---|
| Ben Bacha v. Bush | ) | Case No.  05-CV-2349 (RMC) |
| Zadran v. Bush | ) | Case No.  05-CV-2367 (RWR) |
| Alsaaei v. Bush | ) | Case No.  05-CV-2369 (RWR) |
| Razakah v. Bush | ) | Case No.  05-CV-2370 (EGS) |
| Al Darbi v. Bush | ) | Case No.  05-CV-2371 (RCL) |
| Al Ghizzawi v. Bush | ) | Case No.  05-CV-2378 (JDB) |
| Al Baidany v. Bush | ) | Case No.  05-CV-2380 (CKK) |
| Al Rammi v. Bush | ) | Case No.  05-CV-2381 (JDB) |
| Said v. Bush | ) | Case No.  05-CV-2384 (RWR) |
| Al Halmandy v. Bush | ) | Case No. 05-CV-2385 (RMU) |
| Mohammon v. Bush | ) | Case No.  05-CV-2386 (RBW) |
| Al Quhtani v. Bush | ) | Case No.  05-CV-2387 (RMC) |
| Thabid v. Bush | ) | Case No.  05-CV-2398 (ESH) |
| Rimi v. Bush | ) | Case No.  05-CV-2427 (RJL) |
| Almjrd v. Bush | ) | Case No.   05-CV-2444 (RMC) |
| Al Salami v. Bush | ) | Case No.  05-CV-2452 (PLF) |
| Al Shareef v. Bush | ) | Case No.  05-CV-2458 (RWR) |
| Khan v. Bush | ) | Case No.  05-CV-2466 (RCL) |
| Al Delebany v. Bush | ) | Case No.  05-CV-2477 (RMU) |
| Al Harbi v. Bush | ) | Case No.  05-CV-2479 (HHK) |
| Feghoul v. Bush | ) | Case No. 06-CV-0618 (RWR) |
| Rumi v. Bush | ) | Case No. 06-CV-0619 (RJL) |
| Ba Odah v. Bush | ) | Case No. 06-CV-1668 (HHK) |

| | | |
|---|---|---|
| Wasim v. Bush | ) | Case No. 06-CV-1675 (RBW) |
| Nassem v. Bush | ) | Case No. 06-CV-1677 (RCL) |
| Khan v. Bush | ) | Case No. 06-CV-1678 (RCL) |
| Matin v. Bush | ) | Case No. 06-CV-1679 (RMU) |
| Rahmattullah v. Bush | ) | Case No. 06-CV-1681 (JDB) |
| Yaakoobi v. Bush | ) | Case No. 06-CV-1683 (RWR) |
| Taher v. Bush | ) | Case No. 06-CV-1684 (GK) |
| Akhouzada v. Bush | ) | Case No. 06-CV-1685 (JDB) |
| Azeemullah v. Bush | ) | Case No. 06-CV-1686 (CKK) |
| Toukh v. Bush | ) | Case No. 06-CV-1687 (ESH) |
| Nasser v. Bush | ) | Case No. 06-CV-1689 (RMU) |
| Khan v. Bush | ) | Case No. 06-CV-1690 (RBW) |
| Al Shibh v. Bush | ) | Case No. 06-CV-1725 (EGS) |
| Ezatullah v. Bush | ) | Case No. 06-CV-1752 (RMC) |
| Hakmat v. Bush | ) | Case No. 06-CV-1753 (EGS) |
| Al Ghith v. Bush | ) | Case No. 06-CV-1757 (RJL) |
| Suliman v. Bush | ) | Case No. 06-CV-1758 (RMC) |
| Elisher v. Bush | ) | Case No. 06-CV-1759 (JDB) |
| Gul v. Bush | ) | Case No. 06-CV-1760 (RMU) |
| Abdessalam v. Bush | ) | Case No. 06-CV-1761 (ESH) |
| Lal v. Bush | ) | Case No. 06-CV-1763 (CKK) |
| Saleh v. Bush | ) | Case No. 06-CV-1765 (HHK) |
| Hentif v. Bush | ) | Case No. 06-CV-1766 (HHK) |

| Al Zarnouqi v. Bush | ) | Case No. 06-CV-1767 (RMU) |
| Al Maliki v. Bush | ) | Case No. 06-CV-1768 (RWR) |
| Algahtani v. Bush | ) | Case No. 06-CV-1769 (RCL) |

_____

# RESPONDENTS' MOTION TO DISMISS

Respondents hereby move to dismiss the above-captioned cases.  As explained below, the law of this Circuit is that pursuant to the amendments made to 28 U.S.C. § 2241 by the Military Commissions Act of 2006, Pub. L. No. 109-366, § 7, 120 Stat. 2600, ("MCA") and the Detainee Treatment Act of 2005, Pub. L. No. 109-148, Tit. X, 119 Stat. 2680, ("DTA"), this Court lacks jurisdiction over the detention-related claims of aliens held as enemy combatants at the United States Naval Base at Guantanamo Bay, Cuba ("Guantanamo").  *See Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir.), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1478 (2007).  Furthermore, the claims of former detainees, held as enemy combatants or otherwise, are moot or also not within the Court's jurisdiction pursuant to the MCA.

For similar reasons, respondents also oppose the motions of certain petitioners in these cases to stay or "stay and abey" the cases instead of dismiss them.  Petitioners' motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases.

Accordingly, petitioners' "stay and abey" motions must be rejected, and these cases must be dismissed in their entirety.[1]

---

[1] A number of the above-captioned cases were previously stayed or administratively closed by the Court pending resolution of the jurisdictional issues by the Court of Appeals.  Now that the Court of Appeals has confirmed that the MCA withdraws habeas and other jurisdiction of the District Court in these cases, the stays or administrative closures of those cases should be lifted to address respondents' motion to dismiss.

Further, while the Court had previously dismissed *Khalid (Benchellali) v. Bush*, No. 04-CV-1142 (RJL), and *Boumediene v. Bush*, No. 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), because the Court of Appeals in *Boumediene* vacated that dismissal in light of the Court's lack of jurisdiction in the matter, *see* 476 F.3d at 994, respondents seek dismissal of those cases consistent with the Court of Appeals' disposition in *Boumediene*.

## BACKGROUND

The above-captioned actions were previously brought by or on behalf of aliens currently or previously detained by the Department of Defense ("DoD") at Guantanamo Bay.

The Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, was enacted on October 17, 2006. The MCA amended the habeas statute, 28 U.S.C. § 2241, adding a subsection (e) to provide that "[n]o court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the United States determined to be enemy combatants or awaiting such a status determination, or (2) any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of aliens who are or were so detained, except for the exclusive review mechanism in the Court of Appeals created under the DTA for addressing the validity of the detention of such aliens.[2] *See* MCA § 7(a). This new amendment to § 2241 took effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relates to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001." *Id.* § 7(b).

On February 20, 2007, the Court of Appeals held in *Boumediene* that the MCA plainly applies to all cases filed by aliens detained as enemy combatants, including pending habeas petitions such as these, and withdraws all District Court jurisdiction over such cases. *See* 476 F.3d 981, 986-88; *id.* at 994 ("Federal courts have no jurisdiction in these cases."). The Court of

---

[2] *See* DTA § 1005(e)(2)-(3) (as amended by MCA §§ 9-10). Section 1005(e)(2) of the DTA, as amended, states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

Appeals also held that the withdrawal of habeas jurisdiction over pending cases did not violate the Suspension Clause because the alien detainees held at Guantanamo have no constitutional rights and because the constitutional right to seek habeas review does not extend to aliens held at Guantanamo. *Id.* at 988-94. Consequently, the Court of Appeals (1) ordered that the district courts' decisions on appeal be vacated and (2) dismissed the cases on appeal for lack of jurisdiction. *Id.* at 994. The Supreme Court denied *certiorari* in *Boumediene* on April 2, 2007. *See Boumediene v. Bush*, ___ U.S. ___, 127 S. Ct. 1478 (Apr. 2, 2007).

## ARGUMENT

I.  **THE CASES OF PETITIONERS WHO REMAIN DETAINED AT GUANTANAMO BAY SHOULD BE DISMISSED**

The majority of the petitioners in the above-captioned cases are currently detained at Guantanamo, and all of those petitioners have been determined by the United States to be enemy combatants or are awaiting such a determination of their status.[3] *See* Second Declaration of Karen L. Hecker ¶¶ 2–3 (attached as Exhibit A) (explaining that all detainees currently at Guantanamo Bay have been determined by DoD to be enemy combatants or are awaiting such a determination).[4] In light of *Boumediene*, the law of this Circuit is settled:[5] under the MCA,

---

[3] This group of petitioners would comprise all petitioners in the above-captioned cases who are not identified in the attached Exhibits B and C listing petitioners who are no longer detained at Guantanamo, *i.e.*, are no longer in United States' custody.

[4] Petitioners Majid Khan in *Khan v. Bush*, No. 06-CV-1690 (RBW), and Ramzi Bin Al-Shibh in *Al-Shibh v. Bush*, No. 06-CV-1725 (EGS), (to the extent the *Al-Shibh* filing can even be considered a petition given its form) are the only petitioners in the above-captioned cases who have not had a final enemy combatant status determination by a DoD CSRT, but are awaiting such a determination.

[5] Some of the *Boumediene* petitioners have filed motions in the Court of Appeals and the Supreme Court requesting that issuance of the mandate in *Boumediene* be stayed. However, "[o]nce [an] opinion [is] released it [becomes] the law of this circuit." *Ayuda, Inc. v.*

federal district courts do not have jurisdiction over cases brought by aliens at Guantanamo Bay

detained as enemy combatants or awaiting determination of their status, and such aliens do not

have constitutional rights.  The cases of such petitioners, accordingly, should be dismissed.  *See*

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction [a] court

cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to

exist, the only function remaining to the court is that of announcing the fact and dismissing the

cause.'" (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).[6]

The motions of various petitioners to "stay and abey" these cases provide no basis for a

contrary result.[7]  In their motions, petitioners ask the Court to stay these cases because they

intend to file petitions for review under the DTA and, once they have exhausted that remedy in

the Court of Appeals, they might file a petition for *certiorari* in the Supreme Court, and the

---

*Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring); *see also Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 49 (D.C. Cir.1987) ( "[w]hether or not [a prior case's] position on this point is correct . . . this panel is bound by that position as the law of the circuit"), *vacated in part on other grounds*, 857 F.2d 1516 (D.C. Cir.1988).  Indeed, the Court of Appeals itself considers *Boumediene* binding; in other pending Guantanamo-related appeals, the Court has recently ordered on the authority of *Boumediene* that those cases be dismissed.  *See* Judgment filed Mar. 22, 2007 in *Kiyemba v. Bush*, Nos. 05-5487, *et al.* (D.C. Cir.) (copy attached as Exhibit D); Order filed Apr. 9, 2007 in *Paracha v. Bush*, No. 05-5194 (D.C. Cir.) (copy attached as Exhibit E).

[6] *See also Hicks v. Bush*, No. 02-CV-0299 (CKK), 2007 WL 902303 at *5 (D.D.C. Mar. 23, 2007) ("In *Boumediene*, the D.C. Circuit clearly held that Congress intended to deprive the federal district courts of jurisdiction over 'all cases, without exception, pending on or after the date of the enactment of [the MCA] which relate to any aspect of the detention, transfer, treatment, trial or conditions of detention of an alien detained by the United States since September 11, 2001,' and that Congress did so constitutionally . . . .  As such, this Court lacks jurisdiction to review Petitioner's habeas petition").

[7] Likewise the "Motion to Declare Military Commissions Act Unconstitutional" filed by counsel for petitioners in *Magram v. Bush*, No. 05-CV-0584 (HHK), and *Qayed v. Bush*, No. 05-CV-0454 (RMU), is baseless in light of *Boumediene* and poses no obstacle to dismissal of the cases.

Supreme Court might grant their petition, and, within the scope of its review, the Supreme Court might review the Court of Appeals' jurisdictional ruling in *Boumediene*.  Even if such a speculative chain of events could support petitioners' request, the extraordinary and open-ended stay requested would be contrary both to the law of the Circuit, pursuant to the MCA, that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases.  *See Boumediene*, 476 F.3d at 986, 994; *see also id.* at 999 (Rogers, J., dissenting).

Petitioners take issue with the Court of Appeals' holdings in *Boumediene*, arguing variously that the MCA did not withdraw District Court jurisdiction in these cases,[8] that petitioners possess constitutional rights,[9] and even that any withdrawal of jurisdiction by the MCA is unconstitutional.[10]  Petitioners' mere disagreement with the Court of Appeals' holdings and resolution of the jurisdictional issue in these cases, however, is no reason to decline to give effect to the law of the Circuit in these cases.  Indeed, petitioners' requests that the Court "stay

---

[8] *See, e.g.*, *Qasim v. Bush*, No. 05-CV-1779 (JDB), Mot. to Stay at 6 n.3 (filed Apr. 11, 2007).

[9] *See, e.g.*, *Qasim v. Bush*, No. 05-CV-1779 (JDB), Mot. to Stay at 6-17 (filed Apr. 11, 2007).

[10] *See, e.g.*, *Qasim v. Bush*, No. 05-CV-1779 (JDB), Mot. to Stay at 6-17 (filed Apr. 11, 2007); *Qayed v. Bush*, No. 05-CV-0454 (RMU), Mot. to Declare MCA Unconstitutional (filed Apr. 11, 2007); *Magram v. Bush*, No. 05-CV-0584 (CKK), Mot. to Declare MCA Unconstitutional (filed Apr. 11, 2007).  *See also Al Ginco v. Bush*, No. 05-CV-1310 (RJL), Mot. to Stay at 6 ("denial of certiorari in *Boumediene* leaves unanswered . . . [whether] the writ [of habeas corpus] has been unconstitutionally suspended or eliminated") (filed April 9, 2007); *Al-Ghizzawi v. Bush*, No. 05-CV-2378 (JDB), Mot. to Stay at 6 (same) (filed Apr. 10, 2007); *Al-Hela v. Bush*, No. 05-CV-1048 (RMU), Mot. to Stay at 4 (urging Court to stay rather than dismiss habeas case so as to facilitate re-starting case once DTA proceedings are shown to be inadequate, claiming that Court of Appeals' jurisdictional holding in *Boumediene* is "*immaterial*") (filed Apr. 11, 2007) (emphasis added); *Al-Adahi v. Bush*, No. 05-CV-0280 (GK), Mot. to Stay at 4, 6 (same) (filed Apr. 13, 2007).

and abey" these cases asks the Court improperly to pretend to retain jurisdiction that the Court of Appeals has clearly held does not exist.[11]

Petitioner's reliance for their request on cases in which District Courts have stayed, rather than dismissed, habeas actions brought pursuant to 28 U.S.C. § 2254, pending exhaustion of remedies in state court, is similarly misplaced.  As an initial matter, filing a DTA petition is not merely an exhaustion requirement for the detainees' habeas cases.  Rather, as the Court of Appeals held in *Boumediene*, MCA § 7 eliminates federal court jurisdiction over habeas petitions filed by Guantanamo detainees.  *See* 476 F.3d at 986-88, 994; *see also Hicks*, 2007 WL 902303 at *6 (denying a detainee's motion for preliminary injunction because "*Boumediene* holds that this Court lacks jurisdiction to even consider Petitioner's claims, such that this Court is precluded from even engaging in a balancing of the factors that would be considered on a motion for a preliminary injunction").  Thus, by statute, petitioners have no right to pursue these cases, even after they pursue their remedies in the Court of Appeals under the DTA.  The cases relied on by petitioners involve situations, unlike here, in which court action was pursuant to or consistent with habeas jurisdiction conferred by statute.  *Rhines v. Weber*, 544 U.S. 269 (2005), on which petitioners principally rely, involved a situation in which a federal statute of limitations meant that the habeas petitioner in that case faced certain loss of his habeas rights if the

---

[11] Some petitioners suggest that it would be "premature for this Court to dismiss Petitioners' cases for lack of jurisdiction" before the Supreme Court acts on the pending *certiorari* petition in *Hamdan v. Rumsfeld*, No. 06-1169, or the original habeas action in *In re Ali*, No. 06-1194, which petitioners claim "bear directly" on the jurisdictional holding in *Boumediene*. *See, e.g.*, *Al-Hela v. Bush*, No. 05-CV-1048 (RMU), Mot. to Stay at 3, 4; *Al-Adahi v. Bush*, No. 05-CV-0280 (GK), Mot. to Stay at 3, 4.  No petition for *certiorari*, however, could bear more directly on the decision in *Boumediene* than the petition for *certiorari* in *Boumediene* itself, which was denied by the Supreme Court.  Accordingly, there is no reason to ignore the law of the Circuit reflected in *Boumediene* pending the Supreme Court's disposition of other cases.

limitations period ran before he was able to exhaust his habeas arguments in state court. These cases, by contrast, do not involve any temporal bar to a habeas petition that would otherwise be cognizable in court; rather, petitioners seek to maintain their habeas claims in this Court in the face of a statute that says that they may not do so, but that also provides they may pursue DTA petitions in the Court of Appeals, an avenue of relief that petitioners could have pursued at any time since it was created with the enactment of the DTA over one year ago. In any event, in the cases relied on by petitioners the Supreme Court make clear that the authority of a court to enter a stay is constrained by statute. *See*, *e.g.*, *Rhines*, 544 U.S. at 276 ("District courts do ordinarily have authority to issue stays . . . where such a stay would be a proper exercise of discretion. [The Antiterrorism and Effective Death Penalty Act of 1996] does not deprive district courts of that authority, *cf.* 28 U.S.C. § 2254(b)(1)(A) ('An application for a writ of habeas corpus ... shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State' (emphasis added)), but it does circumscribe their discretion."). Here, the Court, pursuant to statute, lacks jurisdiction, and these cases must be dismissed.

Petitioners' "stay-and-abey" motions, moreover, make clear that they do not genuinely seek a true stay of these cases. Rather, the "stay-and-abey" relief they seek contemplates that various orders of the Court, including the protective order imposing a counsel access regime[12] and any orders requiring advance notice of any transfer of detainees from Guantanamo, would remain extant and enforceable, effectively imposing Court-ordered obligations where the Court

_____

[12] *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (Nov. 10, 2004).

has no jurisdiction to act.[13]  Remarkably, one petitioner even asserts that the so-called "stay-and-abey" would permit the Court to impose a prospective injunction regulating medical care provided to hunger-striking detainees.[14]  But the Court of Appeals has made clear that this Court lacks jurisdiction in these cases, so that the "only recourse is to vacate the district courts' decisions [*i.e.,* the prior decisions of Judges Green and Leon] and dismiss the cases for lack of jurisdiction."  *Boumediene.* 476 F.3d at 994.  *See also Steel Co.*, 523 U.S. at 94 (" 'Without jurisdiction [a] court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' ") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) at 514).  Petitioners' suggested arrangement to continue the habeas litigation regime that Congress rejected in its enactment of the DTA and MCA is unfounded and without basis in law.[15]

---

[13] *See, e.g., Qasim v. Bush*, No. 05-CV-1779 (JDB), Mot. to Stay at 4-5 (protesting any disruption in "status quo" regarding or limiting counsel access); *Al-Ghizzawi v. Bush*, No. 05-CV-2378 (JDB), Mot. to Stay at 5-7 (same) (filed Apr. 10, 2007); *Faraj v. Bush*, No. 05-CV-1490 (PLF), Mot. to Stay at 4-5 (urging maintenance of advance notice of transfer order) (filed Apr. 12, 2007).

[14] *See Al-Adahi v. Bush*, No. 05-CV-0280 (GK), Mot. to Stay at 6-7 (urging Court to grant pending motion to enjoin use of restraint chair in involuntary feeding of hunger-striking detainees).

[15] Of course, certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and "protected" information appropriately, retain vitality beyond the required dismissal of these cases.  Paragraph 50 of the Protective Order in these cases provides that "[t]he termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this protective order."  Furthermore, petitioner's counsel explicitly agreed, as a condition for access to such information, that the Protective Order's non-disclosure requirements would survive termination of the litigation and remain forever binding.  *See* 344 F. Supp. 2d 174, ¶ 17 & Exhibit B (for access to classified information, counsel required to sign Memorandum of Understanding that nondisclosure requirements survive litigation); *id.* ¶ 35 & Exhibit C (for access to protected information, counsel required to sign Acknowledgment that nondisclosure requirements survive litigation).  *Cf. United States v. Mine Workers,* 330 U.S. 258, 289-95

- 8 -

To the extent that an issue such as counsel access or any other appropriate matter is to be addressed, it must be addressed in the Court of Appeals in the context of properly filed DTA petitions for review of CSRT determinations. The Court of Appeals must establish its own procedures, based on the procedural rights that Congress provided to detainees in the DTA and appropriate to the nature of the Court of Appeals' review under the DTA. *Cf. Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); *id.* at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals). Indeed, issues relating to the scope and terms of an appropriate protective order and counsel access regime already are being addressed in the Court of Appeals in two pending DTA petition cases, *Bismullah v. Gates*, No. 06-1197, and *Parhat v. Gates*, No. 06-1397, with oral argument scheduled for May 15, 2007. Consequently, by seeking to continue in place the protective order that has governed these cases in this Court, petitioners are effectively appealing to this Court from decisions of the Court of

---

(1947) (upholding criminal contempt citation for violation of court order even on the assumption that the court issuing the citation was without jurisdiction over the underlying action *ab initio*); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (court's supervisory power to enforce protective order requirements protecting records involved in litigation does not disappear because jurisdiction over the relevant controversy has been lost); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("the lubricating effects of the protective order on pre-trial discovery would be lost if the order expired at the end of the case"). But the sensible approach to the protection of classified and "protected" information reflected in these provisions of the Protective Order does not translate into the sort of broad-based order under which these cases would be stayed in name but would continue to be litigated in practice, as petitioners seem to request.

- 9 -

Appeals that have not even been made.  That sort of anomalous litigation strategy is, at best, a waste of time and should not be permitted to succeed.

In any event, with respect to counsel access, respondents' request for dismissal does not signal an immediate cut-off of access by counsel to their properly represented detainees.  Rather, DoD is permitting counsel visits already approved under the counsel access regime used in this Court during a reasonable period for the wind-up of this District Court litigation and transition of the litigation to the Court of Appeals.  Nothing is preventing petitioners from proceeding with the filing of DTA petitions in the Court of Appeals at this time,[16] and once a petition is filed in the Court of Appeals, the Government will be willing to agree to entry, on an interim basis, of the protective order and counsel access regime it has proposed in *Bismullah* and *Parhat,* so that there would be measures in place to govern counsel access after a DTA petition is filed, but before a ruling in *Bismullah* and *Parhat*.  Counsel's interim agreement to those measures would be without prejudice to their ability to argue for different protective order terms in the Court of Appeals.  In fact, the Court of Appeals in one DTA case already has entered the government's proposed order on an interim basis in order to facilitate counsel access.[17]  Accordingly, there is no reason associated with the issue of counsel access that counsels against prompt dismissal of these cases, which would bring this Court's counsel access regime to an end, only to be replaced

---

[16] A DTA petition can be merely a short document that contains the names of the petitioner and respondent(s) and identifies the determination for which review is sought.  *See* FED. R. APP. P. 15(a)(2); FED. R. APP. P. Appendix, Form 3.  The DTA petition is simply a case-initiating document; the merits of the case are addressed in the parties' later-filed merits briefs.

[17] *See Madni v. Gates*, No. 07-1083 (D.C. Cir.), Order (filed Apr. 16, 2007).

virtually immediately by a counsel access regime entered, on an interim basis or otherwise, by the Court of Appeals, as appropriate.

Thus, petitioners' desire for the continuation of these cases in order to obtain the benefit of various District Court orders provides no legitimate or legally appropriate basis to decline to dismiss the cases, as required by the MCA and the law of the Circuit, or for granting petitioners' requested "stay-and-abey" relief.

* * *

For all of the foregoing reasons, the cases involving detainees currently detained at Guantanamo must be dismissed.

## II.     THE CASES OF PETITIONERS WHO WERE DETERMINED TO BE ENEMY COMBATANTS, BUT HAVE BEEN RELEASED FROM UNITED STATES CUSTODY, SHOULD ALSO BE DISMISSED.

A number of petitioners in the above-captioned cases were previously determined by DoD to be enemy combatants, but the United States subsequently relinquished custody of them. *See* Exhibit B; *compare* Exhibit B *with* Second Hecker Decl. ¶¶ 2-3.  These petitioners' claims also should be dismissed.

Release from United States' custody usually resolves the controversy raised by a habeas petition because "the traditional function of the writ [of habeas corpus] is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Thus, when the United States released petitioners from its custody, the petitioners effectively received all the relief they could seek through habeas, and their cases became moot.[18]  *See Qassim v. Bush*, 466 F.3d 1073,

---

[18] In prior submissions to the Court in various cases in connection with oppositions to motions for advance notice of transfer of detainees from Guantanamo, respondents have made clear that in all cases in which a Guantanamo detainee is transferred to the control of another government, the detainee is transferred entirely to the custody and control of the other

1076-78 (D.C. Cir. 2006) (per curiam) (granting emergency motion to dismiss because petitioners' habeas petition was rendered moot when petitioners were released from Guantanamo to Albania); *see also Almurbati v. Bush*, 366 F. Supp. 2d 72, 80 (D.D.C. 2005) (Walton, J.) (denying request for advance notice of transfer and stating, "[O]nce the respondents release the petitioners from United States custody . . . they will have obtained the result requested [through habeas] and at that point there will be no further need for this Court to maintain jurisdiction."); *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 198 (D.D.C. 2005) (Bates, J.) (denying request for advance notice of transfer and stating, "Every habeas petition, including this one, is ultimately about obtaining release from detention, and where, as here, the United States will relinquish custody of the detainee to the home government there is nothing more the Court could provide to petitioners.") (citation omitted).[19]   In these cases, the habeas petitions seek only declaratory and equitable relief aimed at petitioners' then-detention at Guantanamo by U.S. officials.  Such

---

government; once transferred, the individual is no longer in the custody or control of the United States.  *See* Declaration of then-Deputy Assistant Secretary of Defense for Detainee Affairs Matthew C. Waxman ¶ 5 (copy attached as Exhibit F).  (Although Mr. Waxman has left office, the policies and practices set forth in his prior declaration remain in effect and are applicable.) Thus, any detention of such an individual following his transfer from Guantanamo is by the foreign government pursuant to its own laws and not on behalf of the United States, *id.*, and cannot serve as a basis for preventing a habeas petition against respondents from becoming moot.  Indeed, repercussions flowing from independent acts by foreign sovereigns would not establish a case or controversy preventing mootness.  *See Greater Tampa Chamber of Commerce v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that a challenge against an executive agreement was not a justiciable case or controversy in part because redress of the plaintiffs' alleged injuries would depend on the independent response of the United Kingdom).

[19] The decision of the Court of Appeals in *Omar v. Harvey*, 479 F. 3d 1 (D.C. Cir. 2007), *pet. for reh'g filed*, is entirely distinguishable, as it concerned not only issues of the authority of a court prior to the transfer of a habeas petitioner out of custody to another sovereign country, but also a petitioner who was an American citizen with respect to whom the withdrawal of jurisdiction reflected in the MCA and *Boumediene* did not apply.

claims are now moot.[20]  *See Qassim*, 466 F.3d at 1078 (equitable claims do not survive release from incarceration).

In any event, these petitioners' cases also should be dismissed because jurisdiction is precluded under the MCA.  When these petitions were filed, they challenged the alleged detention of individuals who were "determined by the United States to have been properly detained as an enemy combatant or [were] awaiting such a determination." MCA § 7(a); *see* Second Hecker Decl. ¶¶ 2-3.  Pursuant to the MCA and the DTA, therefore, the Court lacks jurisdiction over the petitions as-filed, regardless of the subsequent release of petitioners.[21] Moreover, § 7(a) of the MCA continues to bar judicial consideration of any grievance "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement," of an alien who "was detained" as an enemy combatant.[22]  The Court, therefore, lacks jurisdiction over the

_____

[20] *See also Scott v. Dist. of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998) ("Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison."); *Lesesne ex rel. B.F. v. Dist. of Columbia*, 447 F.3d 828, 832 (D.C. Cir. 2006) (rejecting view that a request for declaratory relief, accompanied by a "boilerplate request for 'any other relief the Court deems just,'" is "sufficient to forestall mootness").

[21] As the Supreme Court has repeatedly instructed, "subject-matter jurisdiction turns on the facts upon filing." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (*quoted in Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003)); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (*quoted in Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992)).

[22] Jurisdiction is lacking for the additional reason that any challenge to a detainee's status as an enemy combatant rests exclusively in the Court of Appeals.  *See* DTA § 1005(e)(2)-(3); *supra* note 2.  Notably, that exclusive jurisdiction of the Court of Appeals to review an enemy combatant determination under the DTA "cease[s] upon release of such alien from custody of the Department of Defense."  DTA § 1005(e)(2)(D).  Thus, Congress clearly has withdrawn jurisdiction over the claims of these released petitioners.

cases of enemy combatant petitioners who once were detained at Guantanamo, but have since been released, and those cases should be dismissed.

**III.    THE CASES OF PETITIONERS WHO WERE DETERMINED TO BE NO LONGER ENEMY COMBATANTS AND HAVE BEEN RELEASED FROM UNITED STATES CUSTODY SHOULD ALSO BE DISMISSED.**

A small number of petitioners in the above-captioned cases were previously determined by DoD to be "no longer enemy combatants" ("NLECs"), *i.e.*, to no longer meet the criteria for enemy combatant status.  *See* Exhibit C; *compare* Exhibit C *with* Second Hecker Decl. ¶¶ 2-3. These petitioners' claims also should be dismissed.  As discussed *supra* § II, when the United States released petitioners from its custody, the petitioners received all the relief they could seek through habeas, and their cases became moot.  *See Qassim v. Bush*, 466 F.3d 1073, 1076-78 (D.C. Cir. 2006) (per curiam) (granting emergency motion to dismiss because petitioners' habeas petition was rendered moot when petitioners, who were detainees *who had been determined to be NLECs*, were released from Guantanamo to Albania and petitioners could not demonstrate concrete and redressable collateral consequences).  Accordingly, these now-released NLECs' cases should be dismissed.[23]

---

[23] The case, *Muhammed v. Bush*, No. 05-CV-2087 (RMC), involving a now-released NLEC can be dismissed on the additional ground that petitioner never responded to the Court's order that he show cause why his case was not moot in light of his release.  *See Muhammed*, Minute Order (filed Dec. 7, 2006) (requiring petitioner to show cause by Dec. 21, 2006, why case should not be dismissed as moot in light of petitioner's release); *compare Belmar v. Bush*, No. 04-CV-1897 (RMC), Memo. Op. & Order (filed May 24, 2005) (dismissing as moot Guantanamo detainee's case where petitioner failed to respond to order to show cause why case should not be dismissed as moot in light of petitioner's transfer from U.S. custody).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the above-captioned cases.


Dated: April 19, 2007                     Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General

                                          DOUGLAS N. LETTER
                                          Terrorism Litigation Counsel


                                            /s/ *Terry M. Henry*
                                          JOSEPH H. HUNT (D.C. Bar No. 431134)
                                          VINCENT M. GARVEY (D.C. Bar No. 127191)
                                          JUDRY L. SUBAR (D.C. Bar 347518)
                                          TERRY M. HENRY
                                          JEAN LIN
                                          JAMES J. SCHWARTZ
                                          ROBERT J. KATERBERG
                                          NICHOLAS J. PATTERSON
                                          ANDREW I. WARDEN
                                          EDWARD H. WHITE
                                          NICHOLAS A. OLDHAM
                                          JAMES C. LUH
                                          Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Ave., N.W.
                                          Washington, DC  20530
                                          Tel:  (202) 514-4107
                                          Fax:  (202) 616-8470

                                          Attorneys for Respondents

- 15 -